UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCOS ARZOLA,

     Plaintiff,

v.                                                                    Case No. 8:22-cv-2022-CPT

MARTIN O'MALLEY,
Commissioner of the
Social Security Administration,[1]

     Defendant.
_____/

**O R D E R**

     The Plaintiff seeks judicial review of the Commissioner's denial of his claim for

Supplemental Security Income (SSI).  (Docs. 16, 24).  For the reasons discussed below,

the Commissioner's decision is affirmed.

I.

     The Plaintiff was born in 1972, has a fourth grade education, and has no past

relevant work experience.  (R. 27, 351, 374, 402).  In July 2020, the Plaintiff applied

for SSI, alleging disability as of January 1998 due to illiteracy, bipolar disorder,

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to
Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting
Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

auditory hallucinations, polysubstance abuse, and a back issue. *Id.* at 351–71, 374–82, 401. The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. *Id.* at 183–93, 200–207.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted hearings on the matter in October 2021 and February 2022. *Id.* at 37–95. The Plaintiff was represented by counsel at those proceedings and testified on his own behalf. *Id.* A vocational expert (VE) also testified at the first hearing, and the Plaintiff's cohabitant also testified at the second. *Id.*

In a decision issued in March 2022, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since the date of his application in July 2020; (2) had the severe impairments of degenerative disc disease of the lumbar and thoracic spine with radiculopathy, degenerative disc disease of the cervical spine, cervical disc disorder with radiculopathy, and bipolar disorder with schizophrenia/psychotic features; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had a residual functional capacity (RFC) to meet certain physical and mental demands;[3] and

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] These demands included lifting and carrying twenty pounds occasionally and ten pounds frequently; standing/walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; frequently reaching in front and overhead with the left upper extremity; occasionally climbing ramps and stairs but never climbing ropes, ladders, ropes or scaffolds; bilateral handling and fingering frequently; understanding, remembering, and carrying out simple and routine tasks;

(5) based on the VE's testimony, could engage in a number of occupations that were sufficiently prevalent in the national economy. *Id.* at 13–28.  In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 28.

The Appeals Council denied the Plaintiff's request for review.  (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).[4]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5]

---

occasionally interacting with the general public; and maintaining attention and concentration for periods of up to two hours at one time.  (R. 22).

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listed impairments; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing.  42 U.S.C. § 405(g).  Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam)

(citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's determination.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions.  *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.

The Plaintiff raises two challenges on appeal pertaining to the ALJ's RFC determination: (1) the ALJ erred in assessing the Plaintiff's physical limitations by largely crediting the opinions of two state agency consultants, Drs. Gary Smith and Jesse Palmer, while discounting the opinion of an independent physician for the state agency, Dr. Marie Adam, as well as a lifting restriction recommended by an advanced practice registered nurse (APRN); and (2) the ALJ erred in assessing the Plaintiff's mental restrictions by failing to incorporate into her RFC determination the opinions of two state agency consultants, Drs. George Grubbs and Barry Morris, and in disregarding the opinion of another state agency consultant, Dr. Jose Garcon.  (Docs.

16, 24).  As each of these challenges relates to the ALJ's findings at step four, the Court commences its analysis there.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to engage in his past relevant work.  *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945.  To do so, the ALJ must decide given all the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  *Id*.  In making this finding, an ALJ must consider all medical opinions and prior administrative medical findings in a claimant's case record, together with the other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant may be able to do despite his impairments; whether the claimant is limited in his capacity to perform various work activities; and whether the claimant can see, hear, or use his other senses or "adapt to environmental conditions, such as temperature extremes or fumes."  20 C.F.R. § 416.913(a)(2).  A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]"  20 C.F.R. § 416.913(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for

disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. § 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion and prior administrative medical finding instead of generally basing their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R. § 416.927(c) *with* 20 C.F.R. § 416.920c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 416.920c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. § 416.920c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering his own opinion or finding, while consistency deals with whether a medical source or consultant's opinion or finding conforms to other evidence in the record. 20 C.F.R. § 416.920c(c)(1)–(2); *Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *4 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended

Regulations require an ALJ to discuss supportability and consistency but do not obligate her to describe how she evaluated the other three factors.   20 C.F.R. § 416.920c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).  In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion or prior administrative medical finding if the evidence buttresses a contrary assessment. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

A.

As noted above, the Plaintiff's first challenge centers on the ALJ's evaluation of the Plaintiff's physical limitation determinations made by two state agency consultants, Drs. Smith and Palmer, an independent physician, Dr. Adam, and an APRN.  (Doc. 16 at 1, 11–19); (Doc. 24 at 1–5).  The Court will address each of these appraisals in turn, beginning with those rendered by Drs. Smith and Palmer.

In December 2020, Dr. Smith completed a physical RFC assessment of the Plaintiff as part of the SSA's disability review process.  (R. 133–37).  Dr. Smith found that the Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift or carry ten pounds, could stand or walk for about six hours in an eight hour workday, did not have any restrictions with respect to pushing or pulling, could occasionally crawl, stoop, and climb ramps, stairs, ladders, ropes, or scaffolds, could frequently kneel and crouch, and could engage in unlimited balancing.  *Id.* at 134–35. Dr. Smith

also determined that the Plaintiff could reach frequently with his left upper extremity and could occasionally engage in handling and fingering bilaterally. *Id.* at 135–36. In formulating his findings, Dr. Smith remarked that "[t]he objective evidence in [the] file [was] only partially consistent with the [Plaintiff's] ADLs" (i.e., activities of daily living). *Id.* at 136.

Dr. Palmer completed a RFC evaluation of the Plaintiff roughly four months later, in April 2021, also as part of the SSA's disability review process. *Id.* at 163–67. Dr. Palmer's determinations generally mirrored those of Dr. Smith's but added a couple of restrictions, including that the Plaintiff could only balance frequently. *Id.* Dr. Palmer commented in his report that there was "no new [medical evidence of record] submitted for [the Plaintiff's] allegations" and that "[b]ased on [his] review of [the record] in toto, [he] concur[red] with this RFC." *Id.* at 166.

In her decision, the ALJ recounted the findings made by Drs. Smith and Palmer and concluded:

> Dr. Palmer's opinion is more persuasive than Dr. Smith's opinion. While their conclusions that the [Plaintiff] is limited to light work[6] are supported by objective studies of the [Plaintiff's] spine, Dr. Palmer's opinion is more consistent with examination notes concerning issues with range of motion, pain, and sensory loss in the extremities that would

---

[6] As pertinent here, light work is defined as follows:

> Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b).

result in the postural, manipulative, and environmental limitations he noted.

*Id.* at 25–26.

The Plaintiff now argues that the ALJ "erroneously chose to credit" Dr. Smith and Dr. Palmer's opinions because those assessments were "based on an incomplete record." (Doc. 16 at 12–15); (Doc. 24 at 1–2). In support of this contention, the Plaintiff points to MRIs conducted in April 2021 and September 2021[7] after Drs. Smith and Palmer rendered their determinations, which revealed, *inter alia*, that the Plaintiff had advanced degenerative changes in his cervical spine with multilevel canal stenosis. (Doc. 16 at 12–15); (Doc. 24 at 2–3); (R. 992–94, 1120–23). The Plaintiff also points to examinations by a family practitioner, Dr. Herve Cenatus, in June and September 2021 at Tampa Family Health Center. (R. 1033–41). In the first of those examinations, Dr. Cenatus found that the Plaintiff had cervical and thoracic spine spasms, reduced range of motion, and tenderness to palpitation. *Id.* at 1040. And in the second, Dr. Cenatus indicated that the Plaintiff was unable to lift his shoulder past seventy-five degrees, had reduced range of motion in both hands, and had cervical and thoracic spine spasms with reduced range of motion and tenderness to palpation. *Id.* at 1035. The Plaintiff's quarrel with the ALJ's evaluation of Drs. Smith and Palmer's opinion fails.

---

[7] The Plaintiff misstates the year of one of these MRIs as 2011. (Doc. 16 at 15).

It is well settled that an "ALJ may rely on an opinion of state medical consultants even when [those] consultant[s] did not review all [the] medical records." *Jefferson v. Comm'r of Soc. Sec.*, 2019 WL 1417317, at *3 (M.D. Fla. Mar. 29, 2019) (citations omitted). A survey of the case law, however, suggests the caveats are that the state agency consultants must have cited portions of the record in support of their conclusions, the ALJ must have considered the entirety of the record, and substantial evidence must support the ALJ's decision. *See Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 934 (11th Cir. 2017) ("Even if the non-examining doctor did not review all of [the claimant's] medical records before making his RFC determination, he cited portions of the record in support of his conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as [the claimant's] testimony."); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (same); *Surber v. Comm'r of Soc. Sec. Admin.*, 2013 WL 806325, at *6 (M.D. Fla. Mar. 5, 2013) (finding that an ALJ did not err in relying on an earlier opinion where he evaluated the relevant medical records submitted after the opinion was rendered); *Zellner v. Astrue*, 2010 WL 1258137, at *7–8 (M.D. Fla. Mar. 29, 2010) (finding reliance on a prior consultant's opinion would not require reversal if the ALJ considered all the record evidence); *Wood v. Kijakazi*, 2022 WL 17653207, at *4 (S.D. Fla. June 22, 2022) (rejecting the argument that the ALJ had to accord less weight to prior administrative medical findings because the state agency consultants did not review all of a certain doctor's medical records and finding that "based on a

complete review of the record, . . . the ALJ's decision deeming these opinions 'somewhat persuasive' [was] supported by substantial evidence.").

These criteria appear to have been satisfied here.  While Drs. Smith and Palmer did not have access to the later MRIs or Dr. Cenatus's materials, they referenced portions of the record that bolstered their opinions.  *See* (R. 136–37, 166–67).  Further, the ALJ had the entire record before her, and her RFC determination is supported by substantial evidence.  The Court notes in the latter regard that the ALJ acknowledged the findings stemming from the April 2021 MRI but also observed that attendant examinations of the Plaintiff over a two day period revealed he "had no apparent focal deficits, 4/5 strength in [his] left upper extremity, [a] supple neck during a cervical spine exam," and "5/5 motor strength in all extremities."  *Id.* at 17, 1118, 1125, 1129, 1137, 1140.  The ALJ further observed that the Plaintiff's "cervical spine x-ray was described [during this time frame] as showing no evidence for instability at any level." *Id.* at 17, 1127.  As for Dr. Cenatus, the ALJ noted Dr. Cenatus's assessments from June and September 2021 but also pointed out that Dr. Cenatus "encouraged [the Plaintiff in December 2021] to engage in regular exercise of more than 150 minutes per week."  *Id.* at 17–19, 23–24, 1260.  The ALJ additionally highlighted "that [the Plaintiff's] gait ha[d] remained mostly normal, and that [his] strength/range of motion [had] fluctuated with varying types of treatment."  *Id.* at 23.  In the end, the ALJ concluded that restricting the Plaintiff to, *inter alia*, light work with postural restrictions and "to reaching, handling, [and] fingering" frequently "properly address[ed] the

effects of the [Plaintiff's] degenerative disc disease/disorders of the lumbar, thoracic, and cervical spine with associated radiculopathy." *Id.* at 23. The Court agrees.

The Plaintiff alternatively argues that the ALJ should have found Drs. Smith and Palmer's opinions to be unreliable because these providers referenced "inadequate objective evidence" when offering their assessments, suggesting that their review of the record was deficient. (Doc. 16 at 13–15); (Doc. 24 at 1–2). This contention is unavailing. A fair reading of the providers' remarks is that they were simply describing the evidence contained in the file, not asserting that they had an incomplete or insufficient basis upon which to make a judgment regarding the Plaintiff's condition. (R. 136, 166–67).

To the extent the Plaintiff also takes issue with the ALJ's persuasiveness determinations relative to Drs. Smith and Palmer's opinions (Doc. 24 at 1–3), that contention is lacking as well. With regard to supportability, the ALJ noted that the physicians' conclusions regarding the Plaintiff's ability to perform only light work were buttressed "by [the] objective studies of the [Plaintiff's] spine." (R. 26); *see also* (R. 136, 166). Relative to consistency, as discussed earlier, the ALJ found that Dr. Palmer's findings better comported with the examinations of the Plaintiff, which showed that the Plaintiff had issues with range of motion, pain, and sensory loss in the extremities. *Id.* at 26, 986–1007, 1014–21, 1026–43, 1066–92, 1105–1263.

In short, the ALJ's assessments of Drs. Smith and Palmer's opinions are sufficiently substantiated by the record. *Id.* at 26. This is true even if—as the Plaintiff maintains—the information before the ALJ preponderates against her persuasiveness

13

findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (internal quotation marks and citations omitted).

The focus of the Plaintiff's next argument is Dr. Adam, who examined the Plaintiff in November 2020 and determined that the Plaintiff was limited in the use of his hands for activities such as manual assembly, fingering/threading, gripping/grasping, and typing and writing. (Doc. 16 at 15–17); (Doc. 24 at 3–4); (R. 1015–21). The ALJ discussed Dr. Adam's assessments in her decision (R. 16–17, 23, 25) and stated:

> [Dr. Adam's] opinion is somewhat persuasive, as it finds support in Dr. Adam's own observations of the [Plaintiff's] functioning upon exam, although it is not fully consistent with other exam notes, which have not shown limitation in *all* types of hand functioning *to the extent noted*, with the record instead supporting reaching, handling, and fingering restrictions like those adopted in the . . . [ ALJ's RFC].

(R. 25) (emphasis added).

The Plaintiff now asserts that the ALJ erred in evaluating Dr. Adam's determinations pertaining to his upper extremities because those determinations cohered with other evidence in the record, including "the April 2021 and September 2021 MRI cervical spine findings" and "Dr. Cenatus'[s] September [ ] 2021 progress notes." (Doc. 16 at 16–17); (Doc. 24 at 3–4). This contention does not survive scrutiny.

14

As a preliminary matter, the ALJ was not obligated to adopt every part of Dr. Adam's opinion in rendering her RFC assessment despite the fact that she found Dr. Adam's opinion to be somewhat persuasive. *See Guth v. Comm'r of Soc. Sec.*, 2022 WL 8211404, at *9 (M.D. Fla. Aug. 5, 2022) (citing 20 C.F.R. § 416.920c(a)) ("The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive."), *report and recommendation adopted*, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022); *see also Tolbert v. Kijakazi*, 2022 WL 4591646, at *2 (M.D. Ala. Sept. 29, 2022) ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record"); *Powell v. Kijakazi*, 2022 WL 4000719, at *5 (S.D. Ga. Aug. 9, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."), *report and recommendation adopted*, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022).

Moreover, it is evident from the ALJ's decision that she properly weighed Dr. Adam's assessments. With respect to supportability, the ALJ referenced Dr. Adam's own observations of the Plaintiff's examination findings, which included that the Plaintiff had 5/5 strength in his right shoulder, with no observed strength finding in his left shoulder, 4/5 bilateral elbow strength, 3/5 bilateral wrist strength, and 2/5 bilateral grip strength with impairment of fine manipulation. (R. 16–17, 23, 25, 1015–21). As to consistency, the ALJ discussed examination materials and other documentation in the record—including items relating to "hand functioning"—that did not fully comport with Dr. Adam's opinion. This evidence consisted of, *inter alia*,

15

Dr. Palmer's determination —which the ALJ credited—that the Plaintiff could engage in frequent bilateral handling and fingering, *id*. at 26, 165; the Plaintiff's report in October 2020 that although he experienced decreased sensation in his left arm, his sensation was found to be intact throughout his upper left extremity and his strength in his upper and lower extremities was determined to be 4/5 bilaterally, *id.* at 16, 23, 990; a December 2020 x-ray of the Plaintiff's left elbow that showed no fracture, no joint effusion, or no definite degenerative changes, as well as an x-ray of his left wrist and a radiologic study of his right hand that were also both normal, *id.* at 17, 1023–25; and examination findings in April 2021 that the Plaintiff had 4/5 strength in his upper left extremity and 5/5 motor strength in all of his extremities, *id.* at 17, 23, 118, 1129.

As for the evidence the Plaintiff identifies that would seemingly call for greater restrictions relative to his upper extremities (Doc. 16 at 16–17); (Doc. 24 at 3–4), the Court cannot decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore*, 405 F.3d at 1211). Here, the ALJ adequately explained her reasons for determining the persuasiveness of Dr. Adam's opinion, and those reasons are supported by substantial evidence.

As alluded to earlier, the Plaintiff's next contention is directed at an APRN's recommendation that the Plaintiff not lift over ten pounds. (Doc. 16 at 17–18); (Doc. 24 at 4–5); (R. 1108, 1142–43). This recommendation was part of the discharge instructions issued to the Plaintiff by the neurosurgery department at Tampa General

16

Hospital (TGH) in connection with his overnight visit there in April 2021.[8] (R. 1105–1237).  In addition to this lifting limitation, the Plaintiff was directed to follow up in four to six weeks.  *Id.* at 1108, 1142–43.  In her decision, the ALJ deemed this instruction unpersuasive, stating:

> [T]he record shows this restriction was a short-term restriction based on the [Plaintiff] having recently undergone a medical procedure.  The record does not reflect this discharge instruction was intended to be an opinion of long-term restriction, and it is not a complete function-by-function assessment.  Additionally, a restriction to lifting no more than ten pounds is not supported by objective studies consistent with demonstrated abilities concerning range of motion and other functioning in the physical exams discussed above.

*Id.* at 25.

The Plaintiff now argues that the ALJ's evaluation of the APRN's recommendation is "not supported by the facts."  (Doc. 16 at 18); *see also* (Doc. 24 at 4–5).  To buttress this contention, the Plaintiff asserts that he did not undergo a medical procedure during his TGH visit, that the lifting limitation did "not say . . . it [was] a temporary restriction," and that, under the Social Security Rulings (SSRs), this assessment did not have "to cover every aspect of functioning to be valid."  (Doc. 16 at 18) (citing SSR 96-8p, 1996 WL 374184 (1996)).   This contention is unconvincing.

While it is arguably true that the Plaintiff did not technically have a procedure done during his stay as TGH, he did undergo multiple imaging studies, including MRI, x-ray, and CT scans.  (R. 1111–15).  Regardless, the ALJ's overall conclusion that this

---

[8] This visit also was when the first set of MRI studies discussed above were conducted.  *See* (R. 1120–23).

restriction was temporary is a reasonable one and is adequately bolstered by the record as a whole.  For one, the discharge note does not specify that it is either a long or short term limitation. *See id.* at 1108, 1142–43.   Second, as the ALJ mentioned, the circumstances surrounding the instruction as evidenced by the record sufficiently support the ALJ's interpretation, including the truncated follow-up time frame and the absence of objective findings from the Plaintiff's physical examinations that establish the basis for the restriction.[9]  *Cf. Kirkpatrick v. Berryhill*, 2018 WL 6070343, at *9 (M.D. Ala. Nov. 20, 2018) (deeming a physician's advice that the claimant should avoid lifting more than one pound and should follow up in eight to ten days was appropriately construed as a temporary restriction given the short follow-up period).

Finally, the Plaintiff raises one additional argument in support of his first challenge.  Specifically, he contends in summary fashion that the ALJ should have ordered another consultative exam (CE) to assess his "current functioning given the 2021 cervical spine MRI findings."  (Doc. 16 at 19).   This argument fails as well.

It is well established that an ALJ is not obligated to order a CE wherever there is evidence that a claimant may suffer from a particular impairment.  Instead, an ALJ "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when

---

[9] As the ALJ stated elsewhere in her decision, these examination findings included that during the Plaintiff's stay at TGH, he was found to have 4/5 strength in his upper left extremity and, shortly thereafter, 5/5 motor strength in all extremities.  (R. 17, 23, 1118, 1129).  These findings also include assessments from six months earlier, in October 2020, that the Plaintiff had a full, albeit painful, range of motion during a neck exam and a normal back exam, and more than a year later, in December 2021, was recommended by Dr. Cenatus to engage in 150 minutes of exercise per week. *Id.* at 16, 18, 23–24, 990, 1260.

the evidence as a whole is insufficient to support a determination or decision on [a] claim." 20 C.F.R. § 416.919a.  A claimant seeking remand where an ALJ has declined to order a CE must show not only that the ALJ erred in doing so, but also that the claimant was prejudiced by the ALJ's decision.  *See Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 742 (11th Cir. 2015) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Here, the Plaintiff does not cite this analysis and accompanying authority, much less apply it to the particular facts of this case.  As a result, he has waived this claim. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, he "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).

## B.

The Plaintiff's second challenge—as mentioned earlier—is that the ALJ erred in evaluating the opinions of three other state agency consultants, Drs. Grubbs, Morris

and Garcon, relative to his mental limitations.  (Doc. 16 at 19–25); (Doc. 24 at 5–7).
The Court will address each of these opinions in turn, starting with those rendered by
Drs. Grubbs and Morris.

In November 2020, Dr. Grubbs completed a psychiatric review technique form,
in which he found that the Plaintiff had moderate limitations with respect to
concentration, persistence, or maintaining pace but mild limitations in interacting with
others, understanding, remembering, or applying information, and adapting or
managing himself.  (R. 131–32).  Dr. Grubbs also completed a mental RFC assessment
at the same time, in which he opined, *inter alia*, that the Plaintiff was not significantly
limited in his ability to remember locations and work-like procedures and to
understand and remember very short and simple instructions, but was moderately
limited in his ability to understand and remember detailed instructions.  *Id.* at 137–38.
Dr. Grubbs additionally determined that the Plaintiff was moderately limited in his
abilities to maintain attention and concentration for extended periods, to complete a
normal workday and workweek without interruptions from psychologically-based
symptoms, and to perform at a consistent pace without an unreasonable number and
length of rest periods.  *Id.* at 138–39.  Dr. Grubbs further found that when interacting
socially, the Plaintiff was moderately limited in his ability to interact appropriately
with the general public but not significantly limited in his ability to ask simple
questions or to request assistance, to accept instructions and to respond appropriately
to criticism from supervisors, to get along with coworkers or peers without distracting
them or exhibiting behavioral extremes, and to maintain socially appropriate behavior

20

and to adhere to basic standards of neatness and cleanliness.  *Id.* at 139–40.  And finally with regard to adaptation limitations, Dr. Grubbs opined that the Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting but not significantly limited in his ability to be aware of normal hazards and to take appropriate precautions, to travel in unfamiliar places or to use public transportation, and to set realistic goals or to make plans independently of others.  *Id.* at 140–41.  Dr. Grubbs ultimately concluded that the Plaintiff's mental impairment did not appear to be of disabling proportions because he was capable of performing simple, unskilled, and repetitive assignments and tasks.  *Id.* at 141.

In March 2021, roughly five months after Dr. Grubbs made his assessments of the Plaintiff's mental capabilities, Dr. Morris completed a psychiatric review technique form, in which he determined that the Plaintiff could moderately understand, remember, or apply information, could moderately concentrate, persist, or maintain pace, and could mildly interact with others and adapt or manage himself.  *Id.* at 160–61.  In a mental RFC evaluation conducted the same day, Dr. Morris came to the same conclusions as Dr. Grubbs.  *Id.* at 167–71.

In her decision, the ALJ summarized Dr. Grubbs and Dr. Morris's findings, and observed that the two largely concurred with each other, with the exception that Dr. Morris opined that the Plaintiff had a moderate—as opposed to a mild—limitation in his ability to understand, remember, or apply information.  (R. 26, 132, 161).  The ALJ then went on to state:

21

>These opinions are generally persuasive, as their overall conclusions, which are more consistent with moderate limitation in all areas . . ., are generally supported by and consistent with notes from examining sources, who have indicated some issues with [the Plaintiff's] memory, socialization, cognitive functioning, concentration, and adaptation that are mostly well addressed by the restrictions outlined by the [s]tate agency consultants.

*Id.* at 26.

The Plaintiff now argues that despite finding Drs. Grubbs and Morris's opinions to be persuasive, the ALJ failed to incorporate two aspects of their assessments when restricting the Plaintiff to simple and routine tasks, occasional interaction with the general public, and maintaining attention and concentration for periods of up to two hours at one time.  (Doc. 16 at 20–22); (Doc. 24 at 6).  First, the Plaintiff asserts that the ALJ did not address the Plaintiff's ability to interact with coworkers, even though Drs. Grubbs and Morris agreed that the Plaintiff would have difficulty "cooperating with others."  (Doc. 16 at 20); (Doc. 24 at 6).  The Plaintiff extrapolates from this finding by Drs. Grubbs and Morris that they were of the mind that he would have difficulty if he had to work in tandem with others in a work setting. (Doc. 16 at 20).  The Plaintiff therefore maintains that the ALJ improperly omitted any limitations pertaining to co-workers as part of her mental RFC determination. *Id.*; (Doc. 24 at 6).  The Court disagrees.

In her decision, the ALJ specifically addressed the Plaintiff's capacity to interact with others, concluding that the Plaintiff had only a moderate limitation in this area. (R. 20–21).  The ALJ reasoned:

> While the [Plaintiff's] mental impairments will cause issues with interaction with others, the record does not show significant or disabling problems with the same. [Documentation from a medical center] from October[ ] 2020, reference the [Plaintiff] being cooperative at that time. Dr. Garcon noted a few days later that the [Plaintiff] was cooperative at that time[ ] as well, although he did note the [Plaintiff] had some issues with impulse control. Dr. Garcon's records indicate he was accompanied to the exam by a friend, and the undersigned notes a friend also testified on the [Plaintiff's] behalf at the most recent hearing of record. [Another provider from a neurobehavioral entity] noted [in] October[ ] 2021[ ] that the [Plaintiff] had good eye contact but with hyperactive behavior. The [Plaintiff's] presentation improved [less than three weeks later], after taking prescribed medication resulted in reports of the [Plaintiff] feeling very calm, less agitated, and less irritable. Mood and affect were also appropriate at [a pain relief institute] in October and November 2021. The undersigned finds these records support a conclusion that the [Plaintiff's] mental impairments have caused no more than moderate limitation in his ability to interact with others.

*Id.* (citations omitted). This evidentiary recitation is sufficient to substantiate the ALJ's RFC determination relative to the Plaintiff's ability to interact others. *Scheib v. Comm'r of Soc. Sec.*, 2023 WL 6365462, at *5 (M.D. Fla. Sept. 29, 2023) (noting that the operative inquiry in evaluating an ALJ's persuasiveness determination of a medical source's opinion "is whether the record reveals enough about the supportability and consistency of the medical source's opinion that the court can determine the RFC is supported by substantial evidence").

To the extent that Drs. Grubbs and Morris's assessments could be read as buttressing a more restrictive RFC in this realm, that interpretation would not dictate a different result. This is because the ALJ found Drs. Grubbs and Morris's opinions only to be "generally persuasive" (R. 26) and therefore was not compelled to adopt all

of their findings.  *Culpepper v. Kijakazi*, 2023 WL 2760053, at \*7 (M.D. Ala. Mar. 31, 2023) (noting that the ALJ was under no obligation to adopt every part of a doctor's administrative findings although the ALJ found the opinion to be generally persuasive); *Vilches v. Kijakazi*, 2022 WL 11455775, at \*3 n.2 (M.D. Ala. Oct. 19, 2022) ("The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive."); *see also Sanders v. Comm'r of Soc. Sec.*, 2022 WL 970181, at \*5 (M.D. Fla. Mar. 31, 2022) ("[F]inding an opinion persuasive does not mean it is controlling.") (citing 20 C.F.R. § 416.920c(a).  As one court in this Circuit has observed, an ALJ formulates "an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions."  *Vilches*, 2022 WL 11455775, at \*3.

It is also important to note in this respect that it is the ALJ's duty—not a physician's—to determine the Plaintiff's RFC and that an ALJ is thus "not required to base[ ] [the] RFC on a doctor's opinion."  *Sanders*, 2023 WL 4747681, at \*4 (citing 20 C.F.R. §§ 416.945(a)(1), (3)); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at \*8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ."). While state agency consultants are considered experts with respect to Social Security disability evaluations, ALJs are not compelled "to adopt any prior administrative findings" and instead need only consider this evidence as appropriate according to the pertinent Regulations.  *See* 20 C.F.R. § 416.913a(b)(1); *see also* 20 C.F.R. § 416.920c(a)

(providing that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources").

The Plaintiff additionally takes issue with the ALJ's consideration of Drs. Grubbs and Morris's findings that the Plaintiff would "would be able to complete simple tasks/work procedures [and] be able to make work decisions *but would have difficulties with maintaining attention [and] concentration for extended periods.*" (R. 139, 169) (emphasis added); (Doc. 16 at 19–22); (Doc. 24 at 6).  The Plaintiff asserts that the portion of the ALJ's RFC determination that deemed the Plaintiff to be capable of "maintain[ing] attention and concentration for *periods of up to two hours at one time*" did not cohere with these assessments by Drs. Grubbs and Morris.  (R. 22) (emphasis added); (Doc. 16 at 19–22); (Doc. 24 at 6).  This contention is likewise unavailing.

To begin, it is not clear how the ALJ's restriction that the Plaintiff is able to maintain attention and concentration for periods of up to two hours at one time is at odds with Drs. Grubbs and Morris's finding that the Plaintiff would struggle with maintaining attention and concentration for "extended periods." Drs. Grubbs and Morris did not indicate that their use of the phrase "extended periods" was intended to mean less than the two hours.  Nor would such an interpretation be consistent with SSA's Program Operations Manual System (POMS).  While only persuasive, *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011), that manual defines "extended periods" as "the approximately [two ] hour segments between arrival and first break, lunch, second break, and departure." *See* SSA POMS DI

§ 25020.010(B)(2)(a) (last updated Aug. 23, 2018); *see also Core v. Kijakazi*, 2023 WL 5737789, at *8 (M.D. Ala. Sept. 5, 2023).

Regardless, as explained above, the ALJ need not adopt every part of an opinion she finds persuasive and her RFC determination need only be supported by substantial evidence.  *See Vilches*, 2022 WL 11455775, at *3 n.2 ("By merely finding a medical source's opinion 'generally persuasive,' an ALJ does not abdicate [her] authority— and obligation—to reach an RFC determination based on a thorough review of the entire evidentiary record.").  The ALJ's determination that the Plaintiff could maintain concentration and attention for up to two hour periods crosses this threshold.[10]

The Plaintiff's next argument relative to Dr. Garcon fares no better.  In October 2020, Dr. Garcon conducted a psychological examination of the Plaintiff and concluded, *inter alia*, that "the clinical findings indicate[d the Plaintiff had] poor cognitive functioning [which would] be a barrier to allow [him] to obtain and sustain employment." (R. 1011).  Dr. Garcon also added that the Plaintiff did "not appear [to be] capable of managing his finances."  *Id.*

---

[10] The Plaintiff contends in conclusory fashion that the ALJ failed to discuss the supportability and consistency of Drs. Grubbs and Morris's opinions.  (Doc. 16 at 21); (Doc. 24 at 6).  This argument is wholly perfunctory and is therefore waived.  *Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.  Even if the Plaintiff has not waived this claim, the ALJ sufficiently addressed these factors in her decision.  After engaging in a robust analysis of the medical records from the relevant providers, the ALJ explained that Drs. Grubbs and Morris's assessments were "generally supported by and consistent with notes from [these] examining sources, who . . . indicated some issues with [the Plaintiff's] memory, socialization, cognitive functioning, concentration, and adaptation."  (R. 22–26); *see also Moore v. Soc. Sec. Admin, Comm'r*, 2023 WL 6226106, at *11 (N.D. Ala. Sept. 25, 2023) (stating that the consideration of the supportability and consistency factors for state agency consultants "will largely—if not completely—overlap").

26

In her decision, the ALJ rejected Dr. Garcon's opinion, stating:

> [Dr. Garcon's] opinion is not persuasive, as it is not supported by or consistent with exam notes from treating sources, whose exam notes from a period after Dr. Garcon's exams show[ the Plaintiff's] improvement in cognitive and other functioning.   Additionally, Dr. Garcon's opinion is a conclusion that is appropriately reserved to the Commissioner under the guidelines of 20 CFR [§] 416.927(d).

*Id.* at 25 (citations omitted).

The Plaintiff now asserts that the ALJ erred in rejecting Dr. Garcon's assessments as inconsistent with the other treatment notes.  (Doc. 16 at 22–25); (Doc. 24 at 6–7).  This argument is without merit.

To start, as the Commissioner correctly points out, at least part of Dr. Garcon's opinion addressed an issue reserved to the Commissioner.   (Doc. 21 at 21–22). Specifically, Dr. Garcon's assertion that the Plaintiff's poor cognitive functioning would be a barrier to him obtaining and sustaining employment was effectively an opinion about the Plaintiff's ability to engage in substantial gainful activity, 20 C.F.R. § 416.920b(c)(3)(i). (R. 1011).   The ALJ was not obligated under the governing Regulations to address this conclusion in her decision.  *See Jones v. Comm'r of Soc. Sec.*, 2021 WL 4352383, at *5 (M.D. Fla. Sept. 24, 2021) (observing that an ALJ does not have to consider or discuss a conclusion that the claimant was unable to work because that is an issue reserved for the Commissioner); *Marshall v. Kijakazi*, 2021 WL 4168107, at *4 (M.D. Fla. Sept. 14, 2021) (finding a physician's assertion that "the [claimant was] unable to work" to be a "statement[ ] on an issue reserved to the

Commissioner," which need not be addressed at all by the ALJ) (internal quotation marks and citations omitted).

Relative to Dr. Garcon's remark about the Plaintiff's ability to manage his finances, the ALJ properly evaluated the extent to which that assessment comported with the other information before her. (R. 25). One of the records the ALJ cited in this respect revealed that the Plaintiff had average intelligence, intact memory, good insight and judgment, and reported that he did not have issues with poor executive function or concentration. *Id.* at 18, 20–21, 24, 1097–98, 1101–02. Although the other record the ALJ referenced mainly pertained to the Plaintiff's physical impairments, it also reflected that the Plaintiff exhibited appropriate mood and affect, as well as adequate judgment. *Id.* at 18, 20–21, 1245, 1254.

## IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 29th day of Mach 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

28